# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**MANFRED VAN SANDERS,**

      **Petitioner,**

**v.**                         **CASE NO. 8:15-cv-2821-T-02CPT**

**SECRETARY, DEPARTMENT OF
CORRECTIONS,** *et al.*,

      **Respondents.**

_____/

## ORDER

Manfred Van Sanders, a Florida prisoner, initiated this action for habeas corpus relief pursuant to 28 U.S.C. Section 2254. (Dkt. 1). Upon consideration of the petition and memorandum, the Court ordered Respondent Secretary, Department of Corrections, to show cause why relief sought in the petition should not be granted. (Dkt. 4). Thereafter, Respondent filed a response in opposition to the petition, along with the state court record. (Dkts. 11, 13). Mr. Sanders then filed a reply. (Dkt. 17).

In his petition, Mr. Sanders alleges a total of fourteen (14) claims for relief, set forth in four grounds with sub-grounds. The Court has reviewed the record and the undersigned has read the trial transcript in its entirety. The Court will address related claims together.

## I.    PROCEDURAL HISTORY

On December 7, 2004, Mr. Sanders was charged with capital sexual battery in violation of Florida Statutes Section 794.011(2)(a).[1] (Dkt. 13 Ex. 1 Vol. I at 1). The charges stemmed from

---

[1] That provision provides: "[a] person 18 years of age or older who commits sexual battery upon, or in an attempt to commit sexual battery injures the sexual organs of, a person less than 12 years of age commits a capital felony, punishable as provided in ss. 775.082 and 921.141." Fla. Stat. § 794.011(2)(a).

the alleged sexual battery of Mr. Sanders' young niece.  Following a jury trial held in October 2007, Mr. Sanders was found guilty as charged and sentenced to life in prison. (Dkt. 13 Ex. 1 Vol. I at 40–41, 47–52).  On appeal, Florida's Second District Court of Appeal affirmed his conviction and sentence per curiam. (Dkt. 1 Exs. 2, 4); *Sanders v. State*, 14 So. 3d 1013 (Fla. 2d DCA 2009) (table).

Mr. Sanders then moved, in a motion and amended motion, for post-conviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure.  (Dkt. 13 Ex. 6).  Through a series of orders, the state post-conviction court held an evidentiary hearing on several issues and ultimately denied each claim.  (Dkt. 13 Exs. 7, 10, 11).  He appealed, and the state appellate court affirmed the denial of his Rule 3.850 motion without a written opinion. (Dkt. 13 Exs. 12, 15); *Sanders v. State*, 179 So. 3d 329 (Fla. 2d DCA 2015) (per curiam) (table).

Mr. Sanders also filed a petition for writ of habeas corpus in the state appellate court, which was denied. (Dkt. 13 Ex. 18).  He then filed a petition for writ of certiorari with the Florida Supreme Court, which was dismissed for lack of jurisdiction. (Dkt. 13 Ex. 19).  He subsequently filed a petition alleging ineffective assistance of appellate counsel in the state appellate court, which was denied.  (Dkt. 13 Exs. 20, 23); *Sanders v. State*, 83 So. 3d 726 (Fla. 2d DCA 2011) (table).

Mr. Sanders then filed the instant federal habeas petition in this Court.  Upon review, the Court can resolve the entire petition on the basis of the record.  Therefore, an evidentiary hearing is not warranted.  *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

## II.    GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880,

889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

## A. Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the

writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Under section 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835–36; 28 U.S.C. § 2254(e)(1).

In evaluating a petitioner's claim, a federal habeas court must first identify the highest state court decision, if any, that adjudicated the claim on the merits. *Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016). Where that state court's adjudication is not accompanied by a reasoned opinion, the United States Supreme Court has explained that:

the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

*Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

## B. Ineffective Assistance of Counsel Standard

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both deficient performance by counsel and resulting prejudice. Demonstrating deficient performance

"requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

The petitioner must demonstrate that counsel's alleged errors prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691–92. To show prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted). *See also Cullen v. Pinholster*, 563 U.S. 170, 202 (2011) (a petitioner must overcome the " 'doubly deferential' standard of *Strickland* and AEDPA.") (citation omitted). If a claim of ineffective assistance of counsel can be resolved through one of *Strickland*'s two prongs, the other prong need not be considered. *Strickland*, 466 U.S. at 697; *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

## III.   ANALYSIS

### A.  Petitioner's Challenge to the State Court's Summary Denials

In ground three and grounds four (A)–(G), Mr. Sanders claims that the state court erred by summarily denying his claims without an evidentiary hearing.  (Dkt. 1 at 10–14; Dkt. 17 at 8). Under Florida law, a motion for post-conviction relief may be summarily denied "only if the claims asserted are either legally insufficient or conclusively refuted by the record." *Washington v. State*, 10 So. 3d 1126, 1127 (Fla. 1st DCA 2009) (citing *Freeman v. State*, 761 So.2d 1055, 1061 (Fla. 2000)).  If the state court is unable to "attach portions of the record that conclusively refute the claims," then, "summary denial is improper, and an evidentiary hearing is required." *Id.* at 1127–28.

However, the Court need not decide whether the state post-conviction court erred because a defect in a state collateral proceeding provides no basis for habeas relief, "since no question of a constitutional nature is involved."  *See Carroll v. Sec'y, Dep't of Corr.*, 574 F.3d 1354, 1365 (11th Cir. 2009) (quoting *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992)); *see also Anderson v. Sec'y for Dep't of Corr.*, 462 F.3d 1319, 1330 (11th Cir. 2006) (citing *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987)).  Additionally, "a challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment — [that is], the conviction itself — and thus habeas relief is not an appropriate remedy."  *Carroll*, 574 F.3d at 1365.  Therefore, Mr. Sanders' argument that the state court was required to hold an evidentiary hearing does not entitle him to relief.

### B.  Failure of State Court to Cite *Strickland*

Throughout his federal habeas petition, Mr. Sanders complains that the state courts did not address or apply *Strickland* to his claims of ineffective assistance.  However, the Supreme Court

has explained that

> [a] state-court decision is "contrary to" our clearly established precedents if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*, 529 U.S. 362, 405-406, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). Avoiding these pitfalls does not require citation of our cases — indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.

*Early v. Packer*, 537 U.S. 3, 8 (2002). Accordingly, Mr. Sanders' argument does not entitle him to relief.

## C. Claims of Judicial Bias

Next, Mr. Sanders alleges judicial bias with regard to the claims he presented to the state post-conviction court in his Rule 3.850 motion for post-conviction relief. He contends that the state court judge who presided over his Rule 3.850 post-conviction proceedings "was [previously a] supervising assistant state attorney on his case and even signed papers as [such] directly relating to his case" at the trial level. (Dkt. 1 at 9–10). He asserts that the post-conviction judge improperly "adopted all of the state's arguments . . . as well as [the] state's misinterpretation of law." (Dkt. 1 at 10; *see also, e.g.*, Dkt. 1 at 11, 15, 16; Dkt. 17 at 9–16, 20–22, 25, 27).

Mr. Sanders correctly concedes that his claim of judicial bias in relation to his post-conviction proceedings does not entitle him to habeas relief. However, as he notes, if the claims are meritorious, they "might deprive the state of the [AEDPA] presumption of correctness" due the post-conviction judge's findings, if bias rendered the proceedings not full and fair. *See Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004) (citing *Thompson v. Keohane*, 516 U.S. 99, 108–09 (1995); *Hardwick v. Crosby*, 320 F.3d 1127, 1158 (11th Cir. 2003)[2]). (Dkt. 17 at 9–10).

---

[2] These cases cite a former version of Section 2254(d)(7), effective through April 23, 1996, which provided that AEDPA deference be given to state court decisions unless the petitioner established that "the applicant did not receive a full, fair, and adequate hearing in the State court proceeding."

The record reflects that, following Mr. Sanders' trial and conviction, Assistant State Attorney M. M. Handsel signed and filed a "Notice of Intent to Declare Defendant A Sexual Predator" on March 20, 2008, months after the conclusion of Mr. Sanders' trial. (Dkt. 13 Ex. 1 Vol. I at 58). Three years later, on March 18, 2011, the Honorable Mary M. Handsel signed an order denying in part and striking in part Mr. Sanders' Rule 3.850 motion for post-conviction relief. (Dkt. 13 Ex. 7). Judge Handsel subsequently entered orders denying relief on all of Mr. Sanders' claims. (Dkt. 13 Exs. 10, 11). Notwithstanding the judge's prior participation in his case, the Court concludes that the claim is precluded from federal habeas review.

First, when a state court rejects a petitioner's claim on the basis that the claim was not properly raised in accordance with state procedure, constituting an independent and adequate state ground, federal review of the claim in a subsequent federal habeas proceeding is not available. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). *See also Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). Although Mr. Sanders raised a judicial bias argument on *appeal* of the denial of his Rule 3.850 motion, he did not raise the issue in the post-conviction court. Under Florida law, "an appellate court will not consider an issue unless it was presented to the lower court," except in cases of fundamental error. *Steinhorst v. State*, 412 So. 2d 332, 338 (Fla. 1982). Respondent argued on appeal that, because the matter was not first brought to the post-conviction judge's attention, the state appellate court's review was limited to fundamental error. (Dkt. 13 Ex. 13 at 33). In denying relief, the state appellate court implicitly concluded that the error, if any, was not fundamental — an issue of state law that this Court may not second guess. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Under Florida law, Mr. Sanders' claim is, therefore, procedurally defaulted.

The claim of judicial bias is also procedurally defaulted for a second reason — Mr. Sanders failed to present to the state appellate court any facts demonstrating actual bias or prejudice resulting from the post-conviction judge's participation in his case. He merely argued that, "[a]s the postconviction judge took an active part in Mr. Sanders' postconviction [proceedings] in this matter, she should have recused herself from Mr. Sanders' postconviction proceeding *sua sponte*[.]" (Dkt. 13 Ex. 12 at 49 (italicization added)).

Under the AEDPA, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that -- (A) the applicant has exhausted the remedies available in the courts of the State[.]" 28 U.S.C. § 2254(b)(1)(A). "[T]he prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief." *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004). Because Mr. Sanders failed to raise in state court the various arguments now presented in the instant federal petition — for example, that the post-conviction judge simply "parroted" the arguments made by the State in deciding the issues he presented in his Rule 3.850 motion — he has not exhausted, and has procedurally defaulted, those arguments. [3]

### D. Grounds One & Four (C) — Admission by Silence

#### 1. Ground One

In ground one, Mr. Sanders claims that the trial court[4] erred by "unreasonably limiting [his]

---

[3] "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11 Cir. 1999). "To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish the fundamental miscarriage of justice, which occurs only in an extraordinary case, the petitioner must demonstrate that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

[4] Mr. Sanders styles the claim as one of trial *counsel* error. (Dkt. 1 at 5). However, the substance of his claim

ability to 'fully and fairly' cross-examine [a] state witness about circumstances surrounding [an] alleged tacit admission." (Dkt. 1 at 5). Mr. Sanders explains that his brother, David Patrick Sanders, testified as a witness for the State about a phone call during which Mr. Sanders purportedly admitted to the crime by his silence. (*Id.*). The defense sought testimony from the brother on cross-examination that their grandmother was present at Mr. Sanders' end of the telephone conversation. (*Id.*). The State objected, and the trial court sustained the State's hearsay objection. (*Id.*). Mr. Sanders argues that, in doing so, the trial court unconstitutionally limited the defense's cross-examination on that point. (*Id.*). He further claims that the "[d]ecisions by the trial and appellate court were based on an unreasonable determination of the facts where [the] State did not show that knowledge of [the grandmother's presence] was hearsay." (*Id.*).

The record reveals that the following exchanges occurred at trial:

[**DIRECT EXAMINATION** of David Sanders]

[BY MR. KENNY:]

Q        Did there come a time when Amanda Sanders talks to you about something that may have happened between your brother[,] Manfred[,] and her?

A        Yes.

Q        And does there come a time, when you actually understand that you will actually have a conversation with your brother about it?

A        Yes, I think you are referring to my deposition, and in my deposition, I don't want to get into too many convoluted details.

Q        I will make it easier. Does there come a time when you call your brother when he was in Germany?

A        Yes.

Q        Do you talk to your brother about the allegation that Amanda Sanders made regarding what Manfred Sanders had done to her?

A        To be specific, my step-mother said that Manfred had raped Amanda.

Q        Do you talk to your brother about whether or not he had raped Amanda? Is that the term that you used with him?

A        Yes, on the phone I said -- I'm not sure exactly how I said it. I don't

---

describes alleged trial *court* error, and he sets forth a separate but related claim of ineffective assistance of trial *counsel* on this issue in ground four (C). Dkt. 1 at 11–12). Therefore, the Court construes ground one as a claim asserting trial court, rather than trial counsel, error.

know if I said it was Amanda or Lydia and I probably say now that you raped her, because the allegation had previously been something different.

Q   Now, when you tell him that, what does he say?
A   He didn't say anything.  He just -- we didn't discuss it any further.
Q   Did he deny it?
A   No, at that time he didn't deny it over the phone.

MR. KENNY:   No further questions, Judge.
THE COURT:   Defense may inquire.
MR. LIVERMORE [Counsel for Defense]:   Yes.

## CROSS-EXAMINATION

BY MR. LIVERMORE:

. . .

Q   Now, sir, specifically the conversation that you talked -- when you said you were talking to your brother in Germany, do you remember when that was?
A   It was most likely in late 2003 or early 2004, but I can't recall the exact date.
Q   And that conversation, Manfred was in Germany?
A   That's correct, he would have been in Germany.
Q   When you spoke to your brother, did you speak in English or German?
A   German.
Q   And during the conversation did you learn that your grandmother was next to him listening to the conversation?
A   Well, there is --

MR. KENNY:   Objection, hearsay, Judge.
THE COURT:   I will sustain it, you may rephrase.

BY MR. LIVERMORE:

Q   Did you understand that she was there?

MR. KENNY:   Objection, same objection.
THE COURT:   Sustained.  Counsel please approach the bench.

## (BENCH CONFERENCE)

THE COURT:   My ruling to the question itself calls for hearsay, in he said she was there.
MR. LIVERMORE:   I will just ask him why did he ask.

THE COURT:   Okay.  Let's go.

**(OPEN COURT)**

BY MR. LIVERMORE:

Q       Why didn't you pursue the conversation any further at that point?
A       Well, I really can't directly recollect why I didn't pursue it any further other than my grandmother --

MR. KENNY:   Objection to hearsay, Judge.
THE COURT:   Sustained.

BY MR. LIVERMORE:

Q       All right.  You said at that time he didn't answer to the allegation?
A       That's correct.

(Dkt. 13 Ex. 1 Vol. II at 238–41).

Mr. Sanders raised this issue as a confrontation clause violation in ground two on direct appeal (Dkt. 13 Ex. 2 at 26–31), and the state appellate court affirmed his conviction and sentence without a written opinion.  (Dkt. 13 Ex. 4); *Sanders v. State*, 14 So. 3d 1013 (Fla. 2d DCA 2009) (table).

Faced with the state appellate court's per curiam opinion, the Court must determine whether or not the state appellate court adjudicated the claim on the merits.  Generally, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court has adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011).  However, "[t]he presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 99–100.  "While the *Richter* presumption is a strong one that may be rebutted in unusual circumstances, it is not irrebuttable." *Johnson v. Williams*, 568 U.S. 289, 302 (2013).

Here, Respondent argued in response to the appeal on this issue that, not only was the confrontation clause issue without merit, but Mr. Sanders, in any event, defaulted it by not objecting *at trial* on grounds of a confrontation clause violation. (Dkt. 13 Ex. 3 at 21). Under established Florida law, "to raise a claimed error on appeal, a litigant must object at trial when the alleged error occurs," absent a demonstration of fundamental error. *F.B. v. State*, 852 So. 2d 226, 229 (Fla. 2003)(citing *J.B. v. State*, 705 So. 2d 1376, 1378 (Fla. 1988)). The argument on appeal "must [also] be the specific contention asserted as [the] legal ground for the objection." *Steinhorst v. State*, 412 So. 2d 332, 338 (Fla. 1982).

Given Florida law and Respondent's argument in response to the appeal, the Court concludes that it is more likely the state appellate court resolved the claim by applying its longstanding procedural bar than by adjudicating the claim on the merits. *See Richter*, 562 U.S. at 99–100. *See also Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993) ("[W]e may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of this case."). *See also, e.g.*, *Johnson*, 568 U.S. at 302 n.3 ("For example, when a defendant does so little to raise his claim that he fails to 'fairly present' it in 'each appropriate state court,' *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S. Ct. 1347, 158 L.Ed.2d 64 (2004), the *Richter* presumption is fully rebutted.").

The state appellate court's rejection of the claim, therefore, rested on an independent and adequate state procedural ground precluding habeas review. *See Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001); *see also Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). As Mr. Sanders fails to demonstrate the requisite cause and prejudice or fundamental miscarriage of justice required to overcome the default, this claim is denied. *See Coleman*, 501 U.S. at 750.

2. Ground Four (C)

In related ground four (C), Mr. Sanders claims that his trial counsel should have objected to his brother's testimony that Mr. Sanders responded with silence to hearing the rape accusation. (Dkt. 1 at 11). He claims that such testimony was hearsay and that, had counsel objected, the court could have held a hearing on the admissibility of the testimony. (*Id.*). He argues that, at such a hearing, he would have testified that he did not hear or understand the accusation and that his grandmother's presence prevented any further discussion about it. (*Id.*).

The admissibility of evidence is a matter of state law, and "federal habeas corpus relief [will not be granted] based on an evidentiary ruling unless the ruling affects the fundamental fairness of the trial." *Sims v. Singletary*, 155 F.3d 1297, 1312 (11th Cir. 1998). Even if erroneous, in order to obtain habeas relief, a Petitioner must show that the evidentiary ruling "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Id.* (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

Mr. Sanders raised this issue as ground eight in his Rule 3.850 motion. (Dkt. 13 Ex. 6 at 518–19). The state post-conviction court, affirmed per curiam by the state appellate court denied relief, explaining:

> Admissions are an exception to hearsay. Fla. Stat. § 90.803(18). Additionally, Florida law considers admissions by silence to be an exception to hearsay as well. § 90.803(18)(b), Fla. Stat.; *Nelson v. State*, 748 So. 2d 237. In *Nelson*, 748 So. 2d at 242–42, the [Florida] Supreme Court provides the criteria by which an admission by silence qualifies as an exception to hearsay:
>
> > If a party is silent, when he ought to have denied a statement that was made in his presence and that he was aware of, a presumption of acquiescence arises. Not all statements made in the presence of a party require denial. The hearsay statement can only be admitted when it can be shown that in the context in which the statement was made it was so accusatory in nature that the defendant's silence may be inferred to have been assent to its truth. *Daughtery v. State*, 269 So.2d 426 (Fla. 1st DCA 1972). To

determine whether the person's silence does constitute an admission, the circumstances and the nature of the statement must be considered to see if it would be expected that the person would protest if the statement were untrue. *Tresvant v. State*, 396 So.2d 733 (Fla. 3d DCA), *review denied*, 408 So.2d 1096 (Fla.1981).

> Several factors should be present to show that an acquiescence did in fact occur. These factors include the following:
>
> 1. The statement must have been heard by the party claimed to have acquiesced.
> 2. The statement must have been understood by him.
> 3. The subject matter of the statement is within the knowledge of the person.
> 4. There were no physical or emotional impediments to the person responding.
> 5. The personal make-up of the speaker or his relationship to the party or event are not such as to make it unreasonable to expect a denial.
> 6. The statement itself must be such as would, if untrue, call for a denial under the circumstances.
>
> The essential inquiry thus becomes whether a reasonable person would have denied the statements under the circumstances.

*Id.* [()quoting *Privett v. State*, 417 So. 2d 805–07 (Fla. 5th DCA 1982)[)], [()citing Charles W. Ehrhart, *Florida Evidence* § 803.18b (1997 ed.)[)].

In applying these factors to the Defendant's case, the admission by silence was properly admitted. The Defendant's brother testified at trial that he spoke to the Defendant while the Defendant was living in Germany on a fairly regular basis, and called the Defendant when he heard from his step-mother that the victim alleged the Defendant had "raped" her. *Exhibit C, pp. 178–79.* The brother testified that he called the Defendant and told him that the victim had changed her allegation and was now saying the Defendant had raped her. *Exhibit C, pp. 179–80.* The Defendant did not respond to this allegation. *Exhibit C, p. 180.* The evidence reflects that the Defendant heard this allegation, and although he could have responded or denied the allegations, he did not. *Exhibit C, pp. 178–79.* Additionally, an accusation of rape is the sort of statement that would, if untrue, call for a denial under the circumstances. The Court finds that a reasonable person under those circumstances would have denied the statement that the Defendant raped the victim. *See Nelson*, 748 So. 2d 242–43. The Defendant argues that the trial court is required to hold a hearing outside of the presence of the jury, and that such hearing may have resulted in the Court finding the statement inadmissible. The Court finds that had there been a hearing, the statement would have been admitted for the reasons stated above. Additionally, as the statement was properly admitted, counsel did not have grounds to object to its admission. Therefore, counsel's actions were not deficient. *Freeman v. State*, 761 So. 2d 1055, 1070 (Fla.

2000) ("[C]ounsel cannot be ineffective for failing to raise an issue which is without merit.")[.] Accordingly, this claim is denied.

(Dkt. 13 Ex. 10 at 739–41).

Mr. Sanders argues that the state court's ruling misapplies *Nelson* because the factors required by *Nelson* were not satisfied and the trial court failed to hold a hearing on the admissibility of the testimony about his silence. (Dkt. 1 at 11; Dkt. 17 at 15–16). However, the application of *Nelson* is an issue of state law, which this court may not second guess. *See Estelle*, 502 U.S. at 67. Because the state court concluded the admission by silence was properly admitted under state law and that any such hearing would have reached the same conclusion, it reasonably concluded that trial counsel did not err by failing to object and request such a hearing and that Mr. Sanders suffered no prejudice.

Moreover, Mr. Sanders also raised the admissibility of the testimony as an issue of fundamental error on direct appeal, which was rejected by the state appellate court. (Dkt. 13 Ex. 2 at 22–26; Dkt. 13 Ex. 4). In Florida, "[f]undamental error occurs when the error 'reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.' " *Rambaran v. Sec'y, Dep't of Corr.*, 821 F.3d 1325, 1328 n.3 (11th Cir. 2016) (citation omitted) (quoting *State v. Delva*, 575 So. 2d 643, 644–45 (Fla. 1991)). *See also Kilgore v. State*, 688 So. 2d 895, 898 (Fla. 1996).

The state appellate court conclusively rejected Mr. Sanders' arguments, after considering them on direct appeal, by affirming his conviction and sentence. (Dkt. 13 Ex. 2 at 22–26; Dkt. 13 Ex. 4). Because the state court has determined that the error, if any, was not fundamental, Mr. Sanders has not shown prejudice and cannot demonstrate ineffective assistance of counsel.

As Mr. Sanders has not shown that the state court's decision was contrary to, or unreasonable application of, federal law or based on an unreasonable determination of the facts,

ground four (C) is denied.

## E. Grounds Two and Four (H) — Amendment of the Information

### 1. Ground Two

In ground two, Mr. Sanders contends that the State's amendment of the Information "introduced a fundamental defect" into the charging document and "misled [him] in preparation of his defense," thereby violating his right to due process. (Dkt. 1 at 7; Dkt. 17 at 4; Dkt. 13 Ex. 1 Vol. II at 188). Specifically, he claims that the Information, as amended, was defective because it charged him with sexual battery of a victim under the age of twelve, but nevertheless included August 7, 1999, the victim's twelfth birthday.[5] (Dkt. 1 at 7; Dkt. 13 Ex.1 Vol. I at 1; Dkt. 13 Ex. 1 Vol. II at 188). Mr. Sanders claims that, due to the defect, he "was misled to abandon the prepared age defense [which] would have shown that [the victim] was [twelve] years old at the time." (Dkt. 1 at 7). He argues the defense would have led to his acquittal. (*Id.*).

Mr. Sanders raised this claim as issue one in his Rule 3.850 motion for post-conviction relief. (Dkt. 13 Ex. 6 at 478–79; 511–12). The post-conviction court, affirmed per curiam by the state appellate court, denied relief on procedural grounds, explaining that the claims should have been brought on direct appeal. (Dkt. 13 Ex. 7 at 431 (citing *Williams v. State*, 642 So. 2d 67 (Fla. 1st DCA 1994); Ex. 15).

---

[5] On October 15, 2007, the State was permitted to amend the Information to change the end date of the offense from July 31, 1998 to July 31, 1999. (*See* Dkt. 13 Ex. 7 at 431; Dkt. 13 Ex. 1 Vol. II at 188). The Information was again amended on October 16, 2007, at which time the end date was changed to August 7, 1999. (Dkt. 13 Ex. 1 Vol. II at 188). So amended, the Information charged:

> MANFRED VAN SANDERS . . . on or between the 1st day of May, in the year of our Lord, one thousand nine hundred ninety-eight and the 7th day of August 1999 in the year of our Lord, one thousand nine hundred ninety-nine, . . . did, while being over the age of eighteen years, commit a sexual battery upon [the victim], a child less than 12 years of age by MANFRED VAN SANDERS' penis penetrating the vagina of the victim; said act being done in a lewd, lascivious or indecent manner; contrary to Chapter 794.011(2)(a), Florida Statutes, and against the peace and dignity of the State of Florida.

(Dkt. 13 Ex. 1 Vol. I at 1).

Mr. Sanders argues that because the state court decided the issue on procedural grounds, the issue was not adjudicated on the merits, and, because he believes that the decision was erroneous, he is entitled to de novo review by this Court. (Doc. 1 at 7; Doc. 17 at 4–5). However, even if the Court were to find the claim not precluded from habeas review by the state court's resolution of the claim on an independent and adequate state law ground, and, even if the Court were to review the claim de novo, Mr. Sanders would not be entitled to relief.

Although Mr. Sanders couches the claim in terms of a federal due process violation, "[t]he sufficiency of a state indictment or information is not properly the subject of federal habeas corpus relief unless the indictment or information is so deficient that the convicting court is deprived of jurisdiction." *DeBenedictis v. Wainwright*, 674 F.2d 841, 842–43 (11th Cir. 1982) (citing *Branch v. Estelle*, 631 F.2d 1229, 1233 (5th Cir. 1980); *Meyer v. Estelle*, 621 F.2d 769, 771 (5th Cir. 1980)).

Mr. Sanders does not allege, let alone demonstrate, that the state court was deprived of jurisdiction. Under Florida law, state circuit courts have jurisdiction over felony cases. Fla. Stat. § 26.012(2)(d). Notwithstanding that the Information, as amended, contained one date outside the appropriate window for capital sexual battery, the Information was not misleading, vague, or indistinct. It identified Mr. Sanders and the victim, captioned the crime as "Sexual battery, capital felony," and cited to Section 794.011(2)(a), Florida Statutes. It, therefore, placed Mr. Sanders on notice of the charge for which he was tried and convicted and invoked the jurisdiction of the state circuit court. *See* Fla. R. Crim. P. 3.140(o) (2007) ("No indictment or information, or any count thereof, shall be dismissed or judgment arrested, or new trial granted on account of any defect in the form of the indictment or information or of misjoinder of offenses or for any cause whatsoever, unless the court shall be of the opinion that the indictment or information

is so vague, indistinct, and indefinite as to mislead the accused and embarrass him or her in the preparation of a defense[6] or expose the accused after conviction or acquittal to substantial danger of a new prosecution for the same offense."); *State v. Dilworth*, 397 So. 2d 292, 294 (Fla. 1981) ("[A]n information is legally sufficient if it expresses the elements of the offense charged in such a way that the accused is neither misled or embarrassed in the preparation of his defense nor exposed to double jeopardy.").

Further, although one of the dates in the range of dates set forth in the amended Information — August 7, 1999 — would not support a conviction, the remainder of the range of dates would support conviction for capital sexual battery. *See Ford v. State*, 802 So. 2d 1121, 1131 (Fla. 2001) ("Where a defendant waits until after the State rests its case to challenge the propriety of an indictment, the defendant is required to show . . . that the indictment . . . is so fundamentally defective that it cannot support a judgment of conviction.").

As Mr. Sanders has failed to show a deficiency in the charging document that deprived the state court of jurisdiction, the claim is one of state law not cognizable on federal habeas review. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (quoting *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976)) ("Th[e] limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.' "); *Alamia v. Sec'y, Fla. Dep't of Corr.*, 2017 WL 4857370, at *3 (11th Cir. Mar. 29, 2017). Accordingly, ground two is denied. [7]

---

[6] Although Mr. Sanders claims he was misled to abandon the age defense, he fails to describe any evidence that counsel was prepared to present as part of that defense.

[7] In his reply, Mr. Sanders also seeks to expand his ground-two federal habeas claim to address a footnote in the response to the petition, in which Respondent noted simply that "Petitioner also may have raised this ground in his state habeas corpus proceeding, case no. 2D09-4682. That proceeding was denied. (Ex. 18)." (Dkt. 11 at 18 n. 2; *see* Dkt. 17 at 4–7). Based on that brief reference, Mr. Sanders seeks to reassert in his federal petition the claim raised in the state habeas corpus proceeding — that the Second Amended Information did not charge the crime of Capital Sexual Battery and, therefore, he was convicted of a crime not charged in violation of his right to due process.

2. <u>Ground Four (H)</u>

In ground four (H), Mr. Sanders contends that, when the State moved to amend the information to include August 7, 1999, "neither counsel nor the court noticed that the [I]nformation was now defective and no longer charged Capital Sexual Battery." (Dkt. 1 at 14-15). He argues that counsel should have moved to dismiss the allegedly defective amended Information or defended against the charge with the prepared age defense. (Dkt. 1 at 15).

Mr. Sanders raised this claim as issue four in his Rule 3.850 motion for post-conviction relief. (Dkt. 13 Ex. 6 at 482, 515). The state post-conviction court, affirmed per curiam by the state appellate court, denied relief on the ineffective assistance of counsel claim, explaining:

> . . . [T]he Court finds that the Defendant has failed to establish that he suffered prejudice due to counsel's deficient performance. The use of a victim's twelfth birthday as the end date for a capital sexual battery does not preclude a sentence for a capital sexual battery for a crime committed on the victim before obtaining the age of twelve. *See Rincon v. State*, 996 So. 2d 922 (Fla. 4th DCA 2008). While *Rincon* dealt with a case in which the Defendant entered a guilty plea (and thus admitted to the fact that he had sexually abused the victim while she was under the age of twelve), the [d]efendant could not have entered a plea to an illegal sentence. *Cf. Costin v. State*, 46 So. 3d 96 (Fla. 1st DCA 2010) (trial courts may not impose a sentence in excess of the maximum possible penalty, even when the defendant enters a plea). Thus, *Rincon* stands for the proposition that a Defendant may be found guilty of a capital sexual battery where the information alleges the end date for the crime took place on the victim's twelfth birthday.
>
> Further, the Court finds that the Defendant has failed to establish a reasonable probability that the outcome of the trial would have been different[] had counsel moved for a dismissal based on the dates in the information. The State could have simply amended the information again, listing the day before the victim's twelfth birthday, rather than the victim's actual twelfth birthday. The Defendant has not provided any convincing authority to this Court indicating that the Court would not have permitted the State to amend the information again.
>
> Finally, and most damaging to the Defendant's claim, there was no evidence

---

(Dkt. 17 at 5–7). However, a petitioner is not generally permitted to raise new arguments or issues in a reply. *See United States v. Krasnow*, 484 F. App'x 427, 429 (11th Cir. 2012) (per curiam) (citing *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008)). As Respondent did not assert any substantive argument relating to the claim raised in the state habeas corpus proceeding, Mr. Sanders' request to expand his petition to assert a new claim for federal habeas relief is denied.

presented at trial indicating that the alleged crime took place *on* the victim's twelfth birthday, which would have precluded a capital sexual battery verdict. Rather, the victim specifically testified at trial that she was born on August 7, 1987, and that the crime took place before her birthday in 1998. Thus, she would have been ten years old or had just turned eleven when the sexual battery occurred. *Exhibit A: Jury Trial*, pp. 137; 141; 146–49.

Accordingly, the Court finds that the Defendant has failed to establish that counsel rendered ineffective assistance. Further, even if the Defendant had established deficient performance, he has failed to establish that there is a reasonable probability that the outcome of the trial would have been different.

(Dkt. 13 Ex. 11 at 882–83; Dkt. 15).

The state court's decision is not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts. As explained with regard to ground two, the sufficiency of the Information is a matter of state law. This Court is bound by the state court's determination that the inclusion of the victim's twelfth birthday did not preclude Mr. Sanders' conviction and sentence for capital sexual battery.[8] *See Estelle*, 502 U.S. at 67. Accordingly, trial counsel did not act deficiently by not moving to dismiss.

Furthermore, even if trial counsel erred, the state court reasonably concluded that Mr. Sanders cannot demonstrate prejudice. The state court determined that, under state law, had counsel moved to dismiss, the State would have been permitted to amend the information again to allege the date prior to the victim's twelfth birthday, and the Court is bound by that decision.[9] *See id*; *see also State v. Anderson*, 537 So. 2d 1373, 1375 (Fla. 1989) (citing *Lackos v. State*, 339 So. 2d 217 (Fla. 1976)) ("[T]he state may substantively amend an information during trial,

---

[8] The Court also notes that, notwithstanding Mr. Sanders' argument that *Rincon v. State*, 996 So. 2d 922 (Fla. 4th DCA 2008), cited by the state court, is inapplicable because it was decided after Mr. Sanders' trial (Dkt. 17 at 23), the amended Information did not deprive the state court of jurisdiction as it could still support conviction on any date but the final date specified, as explained with regard to ground two. *See Ford*, 802 So. 2d at 1131.

[9] In reaching this determination, the state court rejected Mr. Sanders' state law argument, which he asserts once again in his federal habeas petition (Dkt. 1 at 15; Dkt. 17 at 24), that the State would have been estopped or judicially barred from amending the Information again to correct the date.

even over the objection of the defendant, unless there is a showing of prejudice to the substantial rights of the defendant."). Therefore, Mr. Sanders cannot demonstrate prejudice from counsel's failure to move for dismissal based on the incorrect date. Nor can there be any honest suggestion that the trial evidence supported a rape on the victim's birthday.

Finally, while Mr. Sanders contends in his reply (Dkt. 17 at 24) that the alleged age defense would have challenged the victim's age at the time of the offense, as previously noted, he fails to describe any evidence that counsel was prepared to present as part of that defense. *See supra* n.6; *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir.1991) (holding that vague, conclusory, or speculative allegations cannot support a claim of ineffective assistance of counsel). Thus, he has not demonstrated ineffective assistance under *Strickland*.

Accordingly, Mr. Sanders has not shown that the state post-conviction court's decision was contrary to, or an unreasonable application of, *Strickland* or based on an unreasonable determination of the facts. Ground four (H) is denied.

### F.  Grounds Three & Four (B) — Age Element

#### 1.  Ground Three

In ground three, Mr. Sanders argues, pursuant to *Giglio v. United States*, 405 U.S. 150, 153 (1972), that the state "knowingly introduced false testimony supporting [the] required age element of [the] charge." (Dkt. 1 at 8). He claims that, at her deposition, the victim "was uncertain of the date of alleged offense and gave sworn testimony that showed it may have been August 7, 1999. Because of this uncertainty[,] the prosecutor amended the information during trial, immediately before opening statement, to include August 7, 1999." (*Id.*). Then, at trial, the prosecutor "prompted [the victim] to testify to the year 1998 and before her birthday, even though she was unsure of the date. [The] State used false testimony to prove the age element and convict the

defendant." (*Id.*).

Mr. Sanders raised this claim as issue three in his Rule 3.850 motion for post-conviction relief. (Dkt. 13 Ex. 6 at 481–82, 514–15). The state post-conviction court denied his claim as procedurally barred, explaining that he should have raised it on direct appeal. (Dkt. 13 Ex. 7 at 432). Nor was it raised at trial. Mr. Sanders challenges that decision, arguing that the prosecutor's alleged error was properly raised on collateral review as an issue of fundamental error affecting his substantive due process rights, which can be raised at any time under Florida law. (Dkt. 17 at 8). *See Johnson v. State*, 128 So. 3d 155, 156–57 (Fla. 2d DCA 2013)(citing *Robinson v. State*, 65 So. 3d 75, 76 (Fla. 2d DCA 2011)).

Mr. Sanders also raised a similar claim in his petition alleging ineffective assistance of appellate counsel. (Dkt. 13 Ex. 20 at 16–18). The state appellate court denied the claim without issuing an explanation. (Dkt. 13 Ex. 23). Respondent argued in response to the allegation of ineffective assistance of appellate counsel that the alleged *Giglio* error was not objected to at trial, and, therefore, was not preserved for appellate review. It also argued that Mr. Sanders presented no evidence or facts to demonstrate that the testimony was false or that, if it was, the prosecutor knew the testimony was false.

The Court concludes that, even considering the claim de novo, Mr. Sanders' *Giglio* claim does not entitle him to relief. As explained with regard to ground one, Mr. Sanders was required, under Florida law, to raise this issue at trial. *See F.B.*, 852 So. 2d at 229; *Steinhorst*, 412 So. 2d at 338. He did not, and he, therefore, defaulted this claim under Florida law. Because Mr. Sanders has failed to assert the requisite cause and prejudice or fundamental miscarriage of justice required to overcome the default, this claim is precluded from habeas review.

Moreover, even were the claim properly before this Court, it is without merit. "[T]he

Supreme Court 'has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair[] and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' " *Ventura v. Att'y Gen., Fla.*, 419 F.3d 1269, 1277 (11th Cir. 2005) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted) (emphasis added)) (citing *Kyles v. Whitley*, 514 U.S. 419, 433 & n.7 (1995); *United States v. Bagley*, 473 U.S. 667, 677 (1985); *Brown v. Wainwright*, 785 F.2d 1457, 1465-66 (11th Cir. 1986)). In *Giglio*, 405 U.S. at 153, the Supreme Court held that the government's failure to correct false and material testimony required the defendant be given a new trial.

"*Giglio* error does not fall within the category of constitutional error that the Supreme Court has characterized as 'structural,' requiring automatic reversal of a tainted conviction." *Id.* at 1278 n.3. Instead, " '[i]n order to prevail on a *Giglio* claim, a petitioner must establish [(1)] that the prosecutor knowingly used perjured testimony[] or failed to correct what he subsequently learned was false testimony, *and* [(2)] that the falsehood was material.' " *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 949 (11th Cir. 2016) (emphasis added) (quoting *Ventura*, 419 F.3d at 1277). "A falsehood is material if there is 'any reasonable likelihood' that it could have affected the result." *Id.* at 949 (quoting *Ventura*, 419 F.3d at 1278). Therefore, within the context of the Section 2254 analysis, "the proper inquiry . . . is whether the [state court's] treatment of [the petitioner's] *Giglio* claim was contrary to or an unreasonable application of the 'any reasonable likelihood' standard." *Id.* (quoting *Ventura*, 419 F.3d at 1279).

Review of the deposition transcript reveals that the victim was unsure of the exact date of the offense and was confused about whether she first saw the video camera allegedly used by Mr. Sanders at her birthday party and then during the offense, or the other way around. (Dkt. 13 Ex. 9 Appendix at 23, 29). However, immediately before her confusion regarding the video camera, she

testified that the offense happened before her annual birthday party and that she felt awkward at her birthday party because he gave her a gift. (Dkt. 13 Ex. 9 Appendix at 22–23; Ex. 10 at 862).

Further, although the record appears to contain only portions of the deposition transcript (*see* Dkt. 13 Ex. 9 Appendix, Victim's Deposition Transcript pages 22, 23, 29; Ex. 10 at 857–64 (constituting pages 1–2, 19–22, 54–55 of the victim's deposition transcript)), nothing in the available portion of the deposition definitively anchors the offense in a specific year. The victim stated only that the offense occurred prior to 2000 and Y2K and that she "was about 11 years old." (Dkt. 13 Ex. 10 at 859–61). Based on her deposition testimony, and given that she turned eleven in 1998 and twelve in 1999 (Dkt. 13 Ex. 10 at 860), the offense could reasonably have happened around the victim's eleventh or twelfth birthday. The record, accordingly, does not show that the victim's trial testimony that the offense occurred in 1998 was false or that the prosecutor knew it was false. Accordingly, ground three is denied.

### 2. Ground Four (B)

In ground four (B), Mr. Sanders raises a related claim of ineffective assistance of trial counsel — alleging that counsel failed to " 'adversarily test' the age element" when the victim: (1) testified at trial that the incident occurred before her twelfth birthday, even though she testified at deposition that it could have happened when she was twelve, and (2) "described events that placed the alleged assault on or after her [twelfth] birthday." (Dkt. 1 at 11). He raised this claim as issue seven in his Rule 3.850 motion for post-conviction relief. (Dkt. 13 Ex. 6 at 485, 518). The state post-conviction court, affirmed by the state appellate court, denied relief on the merits, explaining:

> During the deposition, the victim testified that she believed the sexual battery occurred when she was eleven-years-old. *Exhibit D: Victim's Deposition Transcript*, pp. 19. When counsel asked her why she thought that, she stated she wasn't certain, but she knew it was definitely before the year 2000 because of "the

whole Y2K thing . . ." *Exhibit D: Victim's Deposition Transcript, pp. 20–21.* The victim further testified that the sexual battery occurred before her birthday the summer that the victim was visiting her grandparents. *Exhibit D, pp. 22.* In his reply the Defendant alleges that the State has taken these statements out of context by not including the victim's answer to the question on why it was before her birthday. She responded[,] "I don't know, I just remember feeling really awkward every time I saw him." *Exhibit D, p. 22.* However, the Defendant leaves out a key part of the victim's answer. She continues, saying, "He bought me a little red convertible remote control car and I just remember feeling really awkward when he gave it to me." *Exhibit D, pp. 22–23.* In that context, her statement actually provides evidence that the victim was certain the sexual assault occurred before her birthday, as she recalls feeling uncomfortable when he gave her a birthday gift. Additionally, during the deposition the victim was shown some photos from the summer the sexual assault occurred and testified that she still had the albums that the photos were taken from, so those would likely have the year on them. *Exhibit D, pp. 54.*

    While at trial, the victim identified the same [birthday] photograph and testified under oath that it was taken in 1998. *Exhibit C, p. 146.* The Court fails to see how questioning the victim in the same manner she was questioned during the deposition would provide any evidence that it was not 1998, as the victim claimed it was. The victim had testified that the photo was from 1998, and the Defendant only spent one summer with the victim's grandparents. Therefore, the Court finds that continuing to question the victim on the date would have been fruitless, as she had already testified that it was 1998. Counsel is not deficient for failing to pursue a fruitless line of questioning at trial. *See Reed v. State*, 875 So. 2d 415, 422 (Fla. 2004)(Holding defense counsel was not ineffective for failing to hire an expert when expert testimony would have been fruitless and would not have assisted the defense.); *see also Pangiotakis v. State*, 619 So. 2d 345 (Fla. 2d DCA 1993).

    Additionally, the purpose of the deposition[] differs from the purpose of a trial. Depositions are to aid in the discovery process, "to learn what the testimony will be and attempt to limit it." *State v. Lopez*, 974 So. 2d 340, 347 (Fla. 2008). When the victim determined the photo was taken in 1998, the age was established and therefore defense counsel was not deficient for failing to assert a defense alleging the victim was twelve at the time. *See Reed*, 875 So. 2d at 422.

    Lastly, the Court finds that the Defendant has failed to show prejudice. Had counsel continued with the line of questioning from the deposition, the Defendant has provided no reason why the victim would change her answer to the year the photograph was taken. As counsel was not deficient and the Defendant has failed to show prejudice, this claim is denied.

(Dkt. 13 Ex. 10 at 738–39).

Mr. Sanders challenges the state post-conviction court's determination that the victim was

"certain" the offense occurred before her birthday, noting that she also "described events that placed the alleged assault on or after her birthday." (Dkt. 1 at 11; Dkt. 17 at 13). However, as explained with regard to ground three, the victim explained that she believed the offense occurred prior to her birthday because, when he then gave her a gift on her birthday, she felt uncomfortable. (Dkt. 13 Ex. 9 Appendix at 22–23; Ex. 10 at 862). Given that, during deposition, at least some of her statements indicated that the offense occurred before her birthday and that she was able to provide a reason for believing it occurred before her birthday, Mr. Sanders has not demonstrated that the state court's conclusion that she was certain it occurred before her birthday was unreasonable.

Mr. Sanders also argues that the trial court erred in finding that further cross-examination regarding the date was "fruitless" and in relying on photo albums not in evidence. (Dkt. 1 at 11; Dkt. 17 at 13). However, these arguments are not persuasive. Although the victim's photo albums were not in evidence at trial, her deposition testimony regarding the existence of the photographs was a part of the record before the state post-conviction court. In her deposition, the following exchange occurred:

> Q      You mentioned that every year your grandfather would take the photographs of the party and put them in I guess an album. Would there be writing on the albums like 11th birthday party, 12th birthday party?
> A      Some of them he used to come up with little sayings.
> Q      Do you save the albums?
> A      Probably. I might have some.

(Dkt. 13 Ex. 10 at 363). Although she did not specifically state that the photo albums had dates on them, it was not unreasonable for the state post-conviction court to interpret her answer to indicate that the photographs could have dates on them, given that her grandfather made other notations. Further, she affirmed that she stayed each summer, and therefore celebrated her birthday each summer, at her grandfather's house and that her grandfather made albums each year of

pictures taken at her birthday party. (Dkt. 13 Ex. 10 at 862–63). The trial court did not unreasonably determine that the victim could have used any available photo albums, between the deposition and trial, to assist her in establishing the date of the offense.

Regarding the futility of counsel's further cross-examination of the victim, Mr. Sanders claims that, because the victim was unsure about the date when pressed on the issue at deposition, she would have admitted uncertainty at trial. Alternatively, he claims her credibility would have been damaged by showing that she "backpedaled" under pressure in her deposition under oath. (Dkt. 1 at 11; Dkt. 17 at 14). However, his claim that she would have changed her testimony regarding the date is mere speculation. As alluded to by the post-conviction court, the victim could have testified that, in the time between her deposition and trial, something (such as photo albums or other circumstances), refreshed her memory regarding the date of the offense; such testimony would not have supported Mr. Sanders' defense.

In addition, Mr. Sanders' trial counsel attempted to discredit the victim's testimony as to other issues during cross examination and in closing argument. During cross-examination, counsel questioned whether she experienced vaginal bleeding after the sexual offense and why no one — in a house supposedly full of guests — came to her aid when she screamed. Counsel also elicited from the victim that she previously told her aunt and uncle that Mr. Sanders never touched her, even when she assumed Mr. Sanders was living in Germany and could not act on his alleged threat to harm those she loved. (Dkt. 13 Ex. 1 Vol. II at 217–18, 222–24). Counsel further introduced the testimony of three witnesses who claimed the victim never spent the night at the home where the victim alleged the offense took place. (Dkt. 13 Ex. 1 Vol. II at 266–67, 272, 281). Counsel then highlighted and tied all of these and other pieces of evidence together in closing argument. (Dkt. 13 Ex. 1 Vol. III at 337–45).

Under these circumstances, a reasonable attorney could have decided not to impeach the victim with her previous statement that she was unsure about the date, considering the availability of other issues with which counsel could discredit the victim's testimony and the lack of certainty regarding how the victim would respond if pressed about the resolution of her prior confusion. *See White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992) ("The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial.").

To the extent Mr. Sanders argues in his reply that the prosecutor was inconsistent by seeking leave to amend the dates to include her twelfth birthday, but then deceptively prompting the victim to testify to events occurring in 1998 (Dkt. 1 at 8, Dkt. 17 at 8–9), that argument is not persuasive. When moving to amend the date, the prosecutor acknowledged the uncertainty the victim expressed during deposition but maintained his anticipation that she would testify that the events occurred in 1998. (Dkt. 13 Ex. 1 Vol. I at 67–68). The purported inconsistency does not demonstrate that the victim's testimony was false or that, if it was, the prosecutor knew it was false.

Finally, Mr. Sanders argues that the state court unreasonably concluded that trial counsel was not deficient for failing to assert a defense that the victim was twelve. As explained with regard to grounds two and four (H), Mr. Sanders fails to describe any evidence that counsel was prepared to present as part of that defense, and has, accordingly, failed to demonstrate ineffective assistance. *See Tejada*, 941 F.2d at 1559.

Overall, Mr. Sanders has not demonstrated that the state court's adjudication — that counsel was not deficient and, in any event, that Mr. Sanders did not suffer prejudice — was

contrary to, or an unreasonable application of, *Strickland* or based on an unreasonable determination of the facts. Accordingly, ground four (B) does not entitle him to relief.

## G. Remaining Claims of Ineffective Assistance

### 1. Ground Four (A)

In ground four (A), Mr. Sanders claims that his trial counsel erred by failing to object to the victim's testimony that he told her he "ha[d] been a bad boy." (Dkt. 1 at 10). Mr. Sanders contends that, because the statement was made before the offense, the statement was hearsay. (Dkt. 1 at 10; Dkt. 17 at 11). He further claims that any probative value was outweighed by the inherent prejudice caused to him and that the prejudice was compounded by the prosecutor's repeated reference to the statement, thereby "reasonably affect[ing the] jury's perception of [him] and the presumption of innocence which he was due." (Dkt. 17 at 12; Dkt. 1 at 10).

Mr. Sanders raised this claim as issue five in his Rule 3.850 motion. (Dkt. 13 Ex. 6 at 482– 84; 515–17). The state post-conviction court, affirmed per curiam by the state appellate court, denied the claim, explaining:

> The Court finds this claim has no merit. The State was not presenting this statement made by Defendant to the victim as evidence of bad character, that Defendant was indeed bad, but rather as evidence of the crime itself, which was supported by the testimony of the victim, and further this phrase is not indicative of any prior bad acts and the Court fails to see how it could be interpreted as such by the jury.

(Dkt. 13 Ex. 7 at 432–33).

The record supports the state court's decision, and the Court is bound by the state court's interpretation of state law. *Estelle*, 502 U.S. at 67. Here, the state court determined that the statement was not offered to prove Mr. Sanders' bad character, but was offered, instead, as relevant evidence of the crime in progress. Mr. Sanders challenges that finding, arguing that the "[n]ature of the statement — that [he] admitted he was a 'bad boy' — put [him] in a bad light and . . .

30

prejudiced the jury against him." (Dkt. 1 at 10; *see also* Dkt. 17 at 11–12). Specifically, he asserts

that the phrase was stated in the past tense and uttered before the offense occurred, therefore it was

elicited as evidence of a prior bad act. (Dkt. 17 at 11).[10] However, based on the victim's testimony

at trial, at the time the statement was made, the video camera was already on and Mr. Sanders'

boxers were already pulled to his knees. He then told the victim that he "has been a bad boy" and

moved to the bed, where he proceeded to sexually assault her. (Dkt. 13 Ex. 1 Vol. II at 200–04)

Placing the statement in the context of the rest of her description of the offense, the trial court

reasonably concluded that the statement was evidence of the ongoing offense and was not elicited

as evidence of a past crime or to prove bad character. And, because the statement was, therefore,

not hearsay under Florida law, the state court reasonably concluded that trial counsel was not

ineffective.

Accordingly, the state post-conviction court's decision was not contrary to, or an

unreasonable application of, *Strickland* or based on an unreasonable determination of the facts.

Ground four (A) does not entitle Mr. Sanders to relief.

### 2. Grounds Four (D) & (E) — Detective's Testimony Used for Impeachment

#### a. Ground Four (D)

In ground four (D), Mr. Sanders contends that he was denied a fair trial by his counsel's

failure to object to improper impeachment. (Dkt. 1 at 12). He claims that prior inconsistent

statements of two witnesses, T.C. and A.C., as relayed in a hearsay statement by Detective Hinnant,

---

[10] In his reply, Mr. Sanders also takes issue with the prosecutor's use of the phrase in opening and closing, arguing generally that the evidence "was insufficient to draw any conclusions as to what the phrase actually meant," even though the prosecutor told the jury the evidence at trial would demonstrate its meaning. (Dkt. 17 at 11). However, in his petition, Mr. Sanders claimed the prosecution erred by eliciting and repeating the phrase, given its allegedly prejudicial nature as an improper attack on his character. He did not challenge that the prosecution's use of the statement in opening and closing was unsupported by the evidence. Mr. Sanders is not permitted to raise new arguments or issues in his reply. *See United States v. Krasnow*, 484 F. App'x 427, 429 (11th Cir. 2012) (per curiam) (citing *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008)). Accordingly, this claim is denied.

were improperly used as substantive evidence and to impeach another declarant, Rose Rudy, whose home was the site of the offense. (*Id.*; Dkt. 17 at 16). Rose Rudy was called as a witness by the defense and testified that neither the victim nor Mr. Sanders ever spent the night at her home. (Dkt. 13 Ex. 1 Vol. II at 266–67). Mr. Sanders claims that, because Rose Rudy's testimony directly contradicted the victim's testimony, the improper impeachment of her testimony "likely affected [the] jury's decision." (Dkt. 1 at 12).

He further claims that the prosecutor improperly argued the evidence during closing by repeating the impeaching statements. (*Id.*; Dkt. 17 at 17). He specifically challenges the prosecutor's statement during closing that:

> Detective Hinnant says when he's talking to Rose Rudy, Grandmom Rose, the two girls are present and when Rose Rudy said, no, [the victim] never spent the night. These two girls are correcting, no, Gram, you got it wrong and he talks to them.

(Dkt. 13 Ex. 1 Vol. III at 353–54; Dkt. 1 at 12).

Mr. Sanders raised this claim as issue eleven in his Rule 3.850 motion for post-conviction relief. The state post-conviction court, affirmed by the state appellate court, denied relief, explaining:

> [T]he Defendant claimed that counsel was ineffective for failing to object to the State's use of impermissible hearsay from Detective Hinnant to impeach Rose Rudy's testimony during the State's closing argument. Specifically, the Defendant alleged that the State's closing was improper by arguing that Rose Rudy's granddaughters told Detective Hinnant that Rose Rudy was mistaken, and the victim had spent the night at Ms. Rudy's, which improperly bolstered the victim's testimony. Additionally, the Defendant alleges that Rose Rudy's testimony that the victim, her grandfather, and the Defendant never spent the night at her residence was critical to the defense, and had it not been impeached it would have cast doubt on the victim's story and resulted in a different verdict.
>
> "Attorneys are permitted wide latitude in closing arguments but are not permitted to make improper argument." *Merck v. State*, 975 So. 2d 1054, 1061 (Fla. 2007), citing *Gore v. State*, 719 So. 2d 1197, 1200 (Fla. 1998). During its closing argument, the State argued: "Rose Rudy testified that — well, one of the things she testified to, yes, she never met [the Defendant]. And yet, folks, there's

a picture of her and [the Defendant] at [the victim's] birthday." *Exhibit C, p. 294.*
This argument related directly to evidence that was permissible presented at trial.
*Exhibit C, pp. 148–47, 207, 209–10.* The State's argument is highlighting the
difference between the properly introduced photograph and Rose Rudy's
testimony, which is completely proper during closing arguments.
*See Evans v. State*, 838 So. 2d 1090, 1095 (Fla. 2002) ("Prosecution was entitled to
highlight inconsistencies between Evans' testimony and other evidence in the case
and to expose contradictions and improbabilities in Evans' version of events.");
*Miller v. State*, 926 So. 2d 1243, 1254–55 (Fla. 2006) ("[A]n attorney is allowed to
argue reasonable inferences from the evidence and to argue credibility of witnesses
or any other relevant issue so long as the argument is based in evidence.")[.]

> The State did not impeach Rose Rudy's testimony during its closing, instead
it pointed out contradictions and inconsistencies between her testimony and other
evidence. This is permissible, and therefore counsel had no basis to object to it.
Accordingly, the Defendant has failed to show deficiency, and this claim is denied.

(Dkt. 13 Ex. 10 at 744–45; Dkt. 15).

Whether Mr. Sanders' counsel should have objected to the prosecutor's comments requires

that the Court first determine "whether the prosecutor's comments were improper," and, second,

"whether any comments found [to be] improper were so prejudicial as to render the trial

fundamentally unfair." *Davis v. Kemp*, 829 F.2d 1522, 1526 (11th Cir. 1987), *cert. denied*,

485 U.S. 929 (1988). Regarding prejudice, "[t]he relevant question is whether the prosecutor's

comments so infected the trial with unfairness as to make the resulting conviction a denial of due

process." *Id.* at 1526–27 (internal quotation marks omitted) (quoting *Darden v. Wainwright*, 477

U.S. 168, 180 (1986)).

Review of the record demonstrates that the prosecutor's comments were not improper. The

prosecutor accurately summarized the evidence that was admitted at trial (albeit, over the objection

of defense counsel) through the testimony of Detective Hinnant. (Dkt. 13 Ex. 1 Vol. II at 292–97;

Vol. III at 353–54). Trial counsel, therefore, did not err by failing to object.

As to the remainder of his claim, Mr. Sanders contends that the state post-conviction court

did not address whether Detective Hinnant's testimony, in the first instance, was improper

impeachment of Rose Rudy's testimony or whether the impeachment was improperly used as substantive evidence. (Dkt. 1 at 12). As Respondent points out, however, Florida law requires a party to obtain a ruling on each issue, otherwise the issue is waived for purposes of appeal. *See Rhodes v. State*, 986 So. 2d 501, 513 (Fla. 2008) (citing Fla. Stat. § 924.051(1)(b); Philip J. Padovano, *Florida Appellate Practice*, § 8.1, at 148 (2007 ed.) ("The aggrieved party must obtain an adverse ruling in the lower tribunal to preserve an issue for review. The appellate courts review only the decisions of lower tribunals . . . . Without a ruling or decision, there is nothing to review.")).[11]

b.      Ground Four (E)

In ground four (E), Mr. Sanders contends that trial counsel should have objected to the improper impeachment of witness T.C., Rose Rudy's granddaughter. He claims that T.C. was not confronted with her alleged prior inconsistent statement that Rose Rudy was wrong and that the victim did stay the night at Rose Rudy's house. Thus, she was improperly impeached with that hearsay statement through Detective Hinnant's rebuttal testimony. (Dkt. 1 at 12–13). Mr. Sanders acknowledges that trial counsel objected once, but claims counsel "should have renewed the objection during the actual questioning of [D]etective [Hinnant] on [the] ground that there was no foundation for impeachment of T.C. (Dkt. 1 at 13). He claims that, "[h]ad counsel successfully made [the] trial court aware of the failing foundation for impeachment[,] then [the] prosecutor would not have been able to impeach the witnesses[, T.C. and A.C.,] and collaterally impeach R[ose] R[udy]." (Dkt. 1 at 13). Further, he argues that, "[s]ince this was a close case based entirely

---

[11] Mr. Sanders argues that he did not waive the claim because he noted in his reply to the Rule 3.850 motion that the State failed to address that portion of the claim. (Dkt. 17 at 17). However, the fact that Mr. Sanders alerted the post-conviction court to the State's failure to respond to an issue has no bearing on whether he, subsequently, obtained a ruling on the issue once the state post-conviction court rendered its decision. He did not, and this issue is, therefore, waived under Florida law.

on witness credibility, there is a reasonable probability that[,] absent the improper impeachment, [the] jury may have disbelieved the alleged victim and acquitted [him.]" (*Id.*).

Mr. Sanders raised this claim in his Rule 3.850 motion, and the post-conviction court, affirmed by the state appellate court, denied relief, explaining:

> Defendant claims that Detective Hinnant's testimony impeaching [T.C.] and [A.C.]'s testimony was improper because the State did not lay a proper foundation to impeach these witnesses by confronting them with the prior inconsistent statement and then giving them a chance to confirm or deny it. The Court finds that there is no procedure incorporating what Defendant claims. Counsel inquired of witnesses [T.C.] and [A.C.] whether they had ever met the Defendant, whether he and the victim had ever spent the night at Rose Rudy's house, and whether they recalled giving contradictory answers at a previous time. Counsel then independently questioned Detective Hinnant regarding what [T.C.] and [A.C.] told him in an interview. There was no improper impeachment here.

(Dkt. 13 Ex. 7 at 434–35; Dkt. 15).

As previously explained, the Court is bound by the state court's determination of state law. *Estelle*, 502 U.S. at 67; *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1299 (11th Cir. 2017). Moreover, contrary to Mr. Sanders' claims, the state post-conviction court did not unreasonably determine the facts. Mr. Sanders points out that T.C. "was only asked if she remembered speaking to a detective[,] to which she answered she did not." (Dkt. 17 at 19; Dkt. 13 Ex. 1 Vol. II at 275). However, given that T.C. testified she did not recall speaking with a detective at all, the state post-conviction court reasonably concluded that she would not recall giving the detective a contradictory statement. Accordingly, the Court concludes that trial counsel did not err in failing to renew the objection during Detective Hinnant's rebuttal testimony.

The state post-conviction court's decision that trial counsel's performance was not deficient was not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts. Therefore, ground four (E) is denied.

3. Ground Four (F)

In ground four (F), Mr. Sanders challenges his trial counsel's failure to object when the prosecutor made the following statement during closing argument:

> And what you're asked to do is make a decision to find this Defendant guilty beyond a reasonable doubt. And when you ask yourself what's beyond a reasonable doubt is, well, do you believe [the victim]? Is there any reason for [the victim] to make this up? Is it reasonable?

(Dkt. 13 Ex. 1 Vol. III at 359–60). Mr. Sanders argues that the prosecutor's statement confused the jury regarding the meaning of reasonable doubt (Dkt. 1 at 13) and that, even after the jury instructions were given, "there remain[ed] the danger that members of the jury followed the state's suggestion and convicted solely on the belief that the victim had no reason to make up the story." (Dkt. 1 at 14).

Mr. Sanders raised this claim as issue nineteen (f) in his Rule 3.850 motion for post-conviction relief. The state post-conviction court, affirmed per curiam by the state appellate court, denied the claim:

> **Ground 19:** The Defendant claims counsel was ineffective for failing to object to the prosecutor's attempts to shift the burden of proof during the state's closing argument. In support of this claim, the Defendant cites to seven statements made by the State.
>
> . . . .
>
> **Ground 19(f):** The Defendant next cites a comment made by the [S]tate addressing reasonable doubt. The State says: "And what you're asked to do is to make a decision to find this Defendant guilty beyond a reasonable doubt. And when you ask yourself what's beyond a reasonable doubt is, well, do you believe [the victim]? Is there any reason for [the victim] to make this up? Is it reasonable?" *Exhibit C, pp. 300–01.* The State is asking the jury to consider whether it is reasonable for the victim to have fabricated the story. The Court fails to see how this creates a burden on the Defendant to prove the victim lied or gives the jury the impression that they should find the Defendant guilty unless the Defense can prove the victim was lying. As this argument was proper, counsel was not deficient for failing to object.

36

(Dkt. 13 Ex. 10 at 749, 751; Dkt. 15).

As explained with regard to ground four (D), the Court must determine whether the prosecutor's comments were improper, and, if so, whether the comments resulted in prejudice that renders Mr. Sanders' conviction a denial of due process. *See Davis*, 829 F.2d at 1526–27. The record reveals that the prosecutor merely asked the jury to consider the reasonableness of various pieces of evidence presented at trial:

> You know we can try to make a lot of information or try to pull a lot of conclusions as to why [the victim] didn't tell anybody, as to why [the victim] waited so long. Of course, [the victim] when she first told Ann Sanders, her aunt[,] at the funeral, why didn't she tell her everything? But even at that time, folks, she was 15 years old still[,] not the same 20-year-old fully grown adult woman you saw here. She kept this in for a long time. And why? Well, as she told you, she was scared, embarrassed and ashamed.

> Is that what reasonable common sense would tell you, a ten-year old, 11-year old girl would feel? How would she feel? Mr. Livermore wants you to believe that someone had to have heard this. There's no way that could have gone on. Folks, the door was shut, it was the middle of the night, and [the victim] told you she was woken up, she was sleeping. She wakes up in the middle of the night until the light came on and Manfred Sanders covers her mouth. How loud did she scream? He covered her mouth and she was scared. All of this, folks, is possible. And what you're asked to do is make a decision to find this Defendant guilty beyond a reasonable doubt. And when you ask yourself what's beyond a reasonable doubt is, well, do you believe [the victim]? Is there any reason for [the victim] to make this up? Is it reasonable? Is it reasonable that when the Defendant gets confronted for the first time about it, that he had done that act, he says nothing. Again, folks, I told you at the beginning of this trial, this trial began with five words, I'd like to end it with one and that's going to be guilty.

(Dkt. 13 Ex. 1 Vol. III at 358–60). The statement did not shift the burden of proof to Mr. Sanders or ask the jury to convict on a standard of less than reasonable doubt. Instead, the prosecutor's comments were appropriately related to the evidence and the credibility of the victim.

Moreover, the trial court instructed the jury on reasonable doubt and that Mr. Sanders was presumed innocent and was not required to prove or disprove anything. (Dkt. 13 Ex. 1 Vol. III at 364–66). Jurors are presumed to follow their instructions, *Richardson v. Marsh*, 481 U.S. 200, 211

(1987), and Mr. Sanders has presented no evidence to overcome that presumption. He merely speculates, without support, that a possibility remains that he was convicted solely because the jury members believed the victim had no reason to make up the allegations. (Dkt. 1 at 14). [12]

Mr. Sanders has, therefore, not shown that his counsel's performance was deficient or that he suffered prejudice. The state post-conviction court's decision was not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts. Ground four (F) is, therefore, denied.

4. Grounds Four (G) and Four (I) — Bolstering of the Victim's Credibility During Closing Arguments

a. Ground Four (G)

In ground four (G), Mr. Sanders contends that, during closing argument, his counsel improperly bolstered the credibility of the victim by stating that the defense did not have to prove motive and that he could not think of a motive for the victim to lie. (Dkt. 1 at 14). Mr. Sanders claims that he discussed with counsel several reasons the victim would lie. [13] Additionally, he argues that the prosecution was able to use counsel's statement to assert there was no motive because she did not fabricate the allegations. (*Id.*). He further contends that, because the outcome of the trial turned on the credibility of the witnesses, the bolstering of the victim's testimony was so damaging that it undermined the confidence in the verdict reached by the jury. (*Id.*).

Mr. Sanders raised this as issue twenty-three in his Rule 3.850 motion. In denying the claim, the state post-conviction court explained:

---

[12] Mr. Sanders urges the Court to consider prejudice with regard to ground four (F) in conjunction with grounds four (G) and (I). (Dkt. 17 at 20). However, as explained, *infra*, the Court concludes no error occurred as to those grounds. *See Strickland*, 466 U.S. 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

[13] At the evidentiary hearing held in the state post-conviction court on a different ground asserted for relief, Defense counsel admitted several such motives were discussed. (Dkt. 13 Ex. 11, Evidentiary Hearing Transcript at 24, 29–30, 39).

As has been repeatedly discussed, "[a]ttorneys are permitted wide latitude in closing arguments but are not permitted to make improper arguments." *Merck*, 975 So. 2d at 1061. The theory of the defense was that the Defendant was not present that night at Rose Rudy's house and the victim had fabricated the entire story of the sexual battery. *Exhibit C, pp. 271–87.* The Defendant cites only one sentence, but taken in context this sentence supports the defense's theory of the case. *Exhibit C, pp. 282–87.* The rest of counsel's closing argument was dedicated to pointing out improbabilities with the victim's testimony. *Exhibit C, pp. 282–87.* . . . In the statement the Defendant refers to, counsel was explaining to the jury that he does not have to provide a motive for the victim to fabricate the story. This was a competent and reasonable statement, consistent with the entire theory of the defense.

Additionally, this statement did not allow the State to make any rebuttal arguments it would not have been able to make based on the theory of the defense. Defense counsel's theory of the case was that the victim fabricated the story, therefore even without that sentence the State would still have been permitted to comment on the victim's credibility and lack of a motive to lie. *See Rivera*, 840 So. 2d at 286–88. Defense counsel was not deficient in making his closing statement[.]

(Dkt. 13 Ex. 10 at 753–54; Dkt. 15).

The state post-conviction court's decision was not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts. Closing argument presented by counsel is a matter of trial strategy, and strategic decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983).

During closing, defense counsel argued as follows:

A word on motive. It is our position[,] as you can see[,] and we submit to you that this didn't happen and what's [sic] she's telling you is not true. I don't know why. You will find nowhere in the instructions to tell you that anybody had to prove motive. Unlike TV[,] not all questions get answered in the course of a trial. This is one we don't have an answer for you[;] other than making one up, I can't tell you. All we do know is that it didn't happen with Manfred Sanders in 1998 in Rose Marie's house.

(Dkt. 13 Ex. 1 Vol. III at 341–42).

From this statement, it is apparent that defense counsel anticipated a question in the jury's mind — "why would the victim lie?" — and resolved it by explaining that he didn't know, but he (and, implicitly, the jury) did not have to know, because such motive was not required. Such anticipation was a tactical decision that fell within the broad range of reasonable professional competence. *See White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992) ("The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial."). Accordingly, trial counsel did not err by telling the jury that he did not know why the victim would lie and that the defense was not required to prove a motive by the victim in that regard.[14] Ground four (G) does not entitle Mr. Sanders to relief.

      b.      Ground Four (I)

In related ground four (I), Mr. Sanders contends that his trial counsel was ineffective for failing to object to the prosecutor's bolstering of the victim's credibility during closing argument. (Dkt. 1 at 15). He takes issue with the following argument made by the prosecutor:

> Well, Mr. Livermore and I agree on one thing, he sat here or stood here actually talking to you saying that he doesn't have to come up with a reason why [the victim] would make all this up. He couldn't think of one and, folks, I agree there isn't any reasonable explanation. And we're going to get to that in a moment why she would make this up. And I submit to you that's because she didn't make any of this up.
>
> . . .
>
> And Mr. Livermore brought it up first, he said, motive. I can't think of a motive. I can't find a motive. And that's because, folks, a motive doesn't exist.

(Dkt. 13 Ex. 1 Vol. III at 346, 348; Dkt. 1 at 15). The prosecutor repeated the lack of a motive

---

[14] Indeed, as the jury was properly instructed by the court, the defense was not required to prove anything. (Dkt. 13 Ex. 1 Vol. III at 364–65).

throughout his closing argument. (Dkt. 13 Ex. 1 Vol. III at 349, 350, 356, 360). Mr. Sanders claims that his counsel should have objected because the argument was solely the prosecutor's opinion, improperly bolstered the victim's credibility, and improperly suggested to the jury that it was sufficient to find Mr. Sanders guilty if they found the victim had no reason to make up the story. (Dkt. 1 at 15).

Mr. Sanders raised this claim as issue eighteen in his Rule 3.850 motion for post-conviction relief. Following an evidentiary hearing, the state post-conviction court, affirmed per curiam by the state appellate court, denied relief:

> After considering the testimony presented at the evidentiary hearing, the Court finds that these comments, when considered in the context of the State's entire closing, were not inappropriate. Defense counsel attacked the victim's credibility extensively during closing. *Exhibit A:* pp. 278–87. The prosecution was therefore entitled to rebut this testimony by arguing the victim lacked motivation to lie and was not fabricating the story. *See Jackson v. State*, 703 So. 2d 515 (Fla. 3d DCA 1997). The State's closing did not go beyond appropriately rebutting the defense's argument about the victim's credibility. *Exhibit A:* pp. 287–301. Further, even if the State had made inappropriate comments during closing, the Court finds that the record shows the jury was appropriately instructed regarding the evaluation of a witness's credibility. *Exhibit A:* pp. 307–310.
>
> . . . There is no reasonable probability that the outcome of the trial would have been different had counsel objected to the State's closing argument.

 (Dkt. 13 Ex. 11 at 888; Dkt. 15).

Upon review, the state court reasonably concluded that the prosecutor's arguments were not improper. *See Davis*, 829 F.2d at 1526. Under federal and Florida law, argument on the credibility of witnesses is permitted during closing argument. *See, e.g.*, *United States v. Sosa*, 777 F.3d 1279, 1298 (11th Cir. 2015); *Ford v. State*, 802 So. 2d 1121, 1129 (Fla. 2001); *Watkins v. Sims*, 81 Fla. 730, 741 (Fla. 1921). Mr. Sanders' trial counsel attacked the victim's credibility and, therefore, the veracity of her allegations throughout cross-examination and closing argument. (Dkt. 13 Ex. 1 Vol. II at 217–18, 222–24; Vol. III at 337–45). The prosecutor did not act

improperly by commenting on the victim's lack of motive to lie, and trial counsel did not err by failing to object to the comments.

Moreover, even were the comments error, the jury was instructed that what the attorneys said in closing argument was not evidence. (Dkt. 13 Ex. 1 Vol. III at 329). The jurors were also properly instructed on how to evaluate witness credibility. (Dkt. 13 Ex. 1 Vol. III at 366–67). As previously explained, jurors are presumed to follow their instructions, *Richardson*, 481 U.S. at 211, and Mr. Sanders has presented nothing to overcome that presumption.

As the state court determined that the prosecutor's comments were proper, it appropriately determined that counsel did not act deficiently by failing to object and that Mr. Sanders did not suffer prejudice. Accordingly, Mr. Sanders has not shown that the state post-conviction court's decision was contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts. Ground four (I) does not entitle him to relief.

5. Ground Four (J)

In ground four (J), Mr. Sanders contends that his counsel erred by failing to request an alibi instruction. He claims that, because the defense presented three witnesses that testified that he never stayed the night at Rose Rudy's house, and because counsel argued in closing that he was never at Rose Rudy's house, the court would have been obligated to give the alibi instruction to the jury if counsel had requested it. He argues that, had the instruction been given, he would have been acquitted.

Mr. Sanders raised this claim as issue twenty-one (b) in his Rule 3.850 motion. Following an evidentiary hearing, the state post-conviction court, affirmed per curiam by the state appellate court, denied the claim, explaining:

> After considering the testimony presented at the evidentiary hearing, the Court finds this claim is entirely without merit. There was no alibi jury instruction

requested because there was no alibi defense presented. Counsel repeatedly argued that the Defendant had never spent the night in the house where the sexual battery occurred. *Exhibit A:* pp. 271–287. However, at no point does the Defendant ever attempt to establish where he was on the night of the sexual battery. An alibi "contain[s] specific information as to the place at which the defendant claims to have been at the time of the alleged offense and, as particularly as is known to the defendant or the defendant's attorney, the names and addresses of the witnesses by whom the defendant proposes to establish an alibi." Fla. R. Crim. Pro. 3.200; *see also Robinson v. State*, 57 So. 3d 278, 282 (Fla. 4th DCA 2011); *see also State ex rel. Mitchell v. Walker*, 294 So. 2d 124, 127 (Fla. 2d DCA 1974) ("An 'alibi' as contemplated by rule 3.200 . . . necessarily means that the defendant will attempt affirmatively to establish not only that he was not at the scene of the crime involved but that, in fact, at the time thereof he was elsewhere, at a particular place sufficiently distant from the scene of the crime, so that he could not possibly have been present at its perpetration."[).]

Accordingly, this claim is **DENIED**. There is no likelihood that an alibi instruction should have been given, as there was no testimony presented that would have provided a viable alibi defense. Therefore, counsel cannot be deemed ineffective for failing to request such an instruction, and the Defendant was not prejudiced by counsel's performance in this regard.

(Dkt. 13 Ex. 11 at 889–90; Dkt. 15). The record supports the state court's decision, as no evidence was introduced at trial that demonstrated where Mr. Sanders was at the time of the offense, if he was not at Rose Rudy's house as alleged.

Notwithstanding that Mr. Sanders believes the state court incorrectly applied state law, the Court is bound by the state court's determination regarding the applicability of the alibi instruction under state law. *Estelle*, 502 U.S. at 67; *Pinkney*, 876 F.3d at 1299. Because the alibi instruction was not applicable, counsel did not err in failing to request it, and Mr. Sanders cannot demonstrate prejudice therefrom. The state post-conviction court's decision was not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts. Ground four (J) is denied.

### 6. Ground Four (K)

In ground four (K), Mr. Sanders contends that his constitutional rights were violated by the

cumulative errors presented in the other grounds of ineffective assistance set forth in his petition. However, as the Court has determined that each of his ineffective assistance claims is without merit, he has not demonstrated cumulative error. *See e.g.*, *Morales v. Sec'y, Fla. Dep't Corr.*, 710 F. App'x 362, 365 (11th Cir. 2017) ("[W]e have rejected all of the claims of error before us. There are, therefore, no errors to cumulate.").

Any of Mr. Sanders' allegations not specifically addressed herein are without merit.

It is therefore **ORDERED AND ADJUDGED** that:

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**. The Clerk shall enter judgment accordingly and close this case.

2. A certificate of appealability (COA) is **DENIED** in this case because Mr. Sanders cannot make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). And because Mr. Sanders is not entitled to a COA, he is not entitled to proceed on appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on January 18, 2019.

      *s/William F. Jung*
      WILLIAM F. JUNG
      United States District Judge

Copies to: Petitioner *pro se*; Counsel of Record